**United States District Court**
For the Northern District of California

1

2

3

4

5        IN THE UNITED STATES DISTRICT COURT

6        FOR THE NORTHERN DISTRICT OF CALIFORNIA

7

8   GARY V. REYNOLDS,                                    No. C 10-4893 SI

9              Plaintiff,                                 **ORDER GRANTING PLAINTIFF'S
                                                          MOTION FOR SUMMARY JUDGMENT**
10    v.                                                  **AND DENYING DEFENDANT'S
                                                          MOTION FOR SUMMARY JUDGMENT**
11  ALLSTATE INS CO., *et al.*,

12             Defendants.
                                            /
13

14       On January 13, 2012, the Court held a hearing on the parties' cross-motions for summary

15  judgment. For the reasons set forth below, the Court GRANTS plaintiff's motion and DENIES

16  defendant's motion.

17

18                                      **BACKGROUND**

19       Plaintiff Gary Reynolds filed this lawsuit seeking declaratory relief concerning defendant

20  Allstate Insurance Company's ("Allstate") obligations under a motorcycle policy Allstate issued to

21  plaintiff. This declaratory action arises from an underlying action entitled *Costanzo v. Reynolds*,

22  Alameda County Superior Court, Case No. VG08407660. In the underlying action, Janice Costanzo

23  seeks in excess of $2 million[1] in damages for injuries she sustained in a September 4, 2006 motorcycle-

24  vehicle collision. At the time of the accident (and currently), Costanzo was plaintiff Reynolds'

25  girlfriend, and she was riding as a passenger on a motorcycle operated by Reynolds when they collided

26  with an oncoming automobile. Plaintiff and Costanzo were thrown from the motorcycle and both

27

28       [1] Plaintiff's motion states that Costanzo seeks in excess of $2 million in damages in the
    underlying action, while defendant's motion states that Costanzo seeks more than $1 million.

**United States District Court**
For the Northern District of California

1  suffered significant injuries.  Costanzo's injuries and damages caused by the collision include a broken

2  left leg with severe infections, which ultimately resulted in the amputation of her leg above the knee.[2]

3  Costanzo Decl. ¶ 27. The vehicle involved in the accident was uninsured, and both plaintiff and

4  Costanzo made insured motorist claims under the Allstate policy.  Allstate paid the full "per person"

5  uninsured motorist policy limit of $100,000 to each of them.  Valdez Decl. ¶ 4.

6       In the underlying state court personal injury action, Allstate is representing plaintiff subject to

7  a reservation of rights to deny coverage to plaintiff as to liability for Costanzo's damages.  In this

8  lawsuit, plaintiff seeks a declaration that Allstate is obligated to defend and indemnify plaintiff under

9  the terms of Allstate's policy against the personal injury damage claims made by Costanzo in the

10  underlying action.

11

12  **I.    Purchase of the policy**

13      On November 8, 1999, Reynolds purchased from Allstate an insurance policy covering his 1999

14  Harvey-Davidson motorcycle.  Reynolds Decl. ¶ 3.  Reynolds was the only insured under the policy for

15  over six years. *Id*. ¶¶ 4, 12.  On or about March 4, 2006, Reynolds and Costanzo purchased a 2006

16  Harley-Davidson motorcycle.  Costanzo made the down payment and took out a personal loan for the

17  balance of the purchase price.  Martin Decl. ¶ 3, Ex. B (Reynolds Depo. at 59:9-60:17).  Both Costanzo

18  and Reynolds made payments on the loan. *Id*. at 61:1-8.  After plaintiff and Costanzo purchased the

19  2006 Harley-Davidson, plaintiff contacted Allstate to add the new motorcycle to his existing policy.

20  Reynolds Decl. ¶¶ 8, 10.  Costanzo believed that because she was the holder of the loan, she was

21  required to be added as an insured under plaintiff's policy, Costanzo Decl. ¶ 13, and plaintiff instructed

22  his Allstate agent to add Costanzo as an additional insured.  Reynolds Decl. ¶ 11.  On March 7 or 8,

23  2006, Costanzo sent a facsimile to plaintiff's Allstate agent, directing the agent to add her to Reynold's

24  policy.  Costanzo's fax stated,

25       insurance for new Harley – see Farmers, please insure as follows:
     Gary V. Reynolds + Janice L Costanzo

26

27      [2]  The Court OVERRULES defendant's objection on relevance grounds to the evidence
regarding the nature and extent of Costanzo's injuries.

28      Unless otherwise noted, the evidence cited in this order is not at issue.

**United States District Court**
For the Northern District of California

1   2683 Parkside Dr
2   Fremont, CA 94536
    Direct # 925.598.3737

3   Martin Decl. Ex. H.

4

5   **II.     Terms of the policy**

6       The policy's liability insuring clauses provide as follows:

7       **Allstate** will pay those damages an insured person is legally obligated to pay because
        of:

8
9       1.     **bodily injury**, sustained by any person; and

10      2.     damage to, or destruction of property.

11      Under these coverages, **your** policy protects an insured person from liability for damage
        arising out of the ownership, maintenance or use, loading or unloading of an insured
        **auto**.  Payments will be made only for damages resulting from covered **bodily injury**
12      and/or property damage.

13      **We** will defend an insured person sued for damages which are covered by this policy
        even if the suit is groundless or false.  **We** will choose the counsel.  **We** may settle any
14      claim or suit if **we** believe it is proper.  **We** will not defend an insured person sued for
        damages which are not covered by this policy.

15  Davis Decl. Ex. A at 4.

16      The policy, as amended in Allstate's California Amendatory Endorsement (AU2250-6), covers

17  the following as "insured persons[:]"

18      With respect to your insured auto:

19      **a)     you**;

20      **b)**    any **resident**; and

21      **c)**    any other person using it with **your** permission.

22  *Id*., Endorsement at 4.

23      Exclusion 6, as it appears in the endorsement, bars coverage for:

24      **[B]odily injury** to an insured person or **bodily injury** to an insured person whenever the
25      ultimate benefits of that indemnification accrue directly or indirectly to an insured
        person.  This exclusion applies only to **you** and **resident** relatives.

26  *Id*., Endorsement at 5.  The policy, as amended by the endorsement, defines "you" and "your" as
27
28  follows:

3

**United States District Court**
For the Northern District of California

1    "**You**" or "**Your**" – means the policyholder named on the Policy Declarations and:

2    **a)**    that policyholder's **resident** spouse; or

3    **b)**    a party who has established with that policyholder a registered domestic

4    partnership under California state law if a **resident** of the same household.

5  *Id*., Endorsement at 5.

6    The Declarations page of the policy does not list a "policyholder." Instead, the Declarations

7  page lists the "NAMED INSURED(S)" as "Gary Reynolds and Janice Costanzo." *Id*. at 1. The policy

8  does not contain a definition of "policyholder."

9

10  **III.    The underlying action**

11    On September 3, 2008, Costanzo filed the underlying action against plaintiff in Alameda County

12  Superior Court, alleging that plaintiff's failure to safely operate his motorcycle and avoid the collision

13  was a substantial contributing factor to the cause of her injuries. By letter dated October 28, 2008,

14  Costanzo's attorney informed Allstate of the underlying action. Valdez Decl. Ex. A. In a letter dated

15  November 21, 2008, Allstate informed plaintiff *inter alia*, that "We have retained the Law Offices of

16  Michael F. Brown to represent and defend your interests. The cost of defense will be paid by Allstate."

17  Valdez Decl. Ex. B. Brown continued to represent plaintiff in the underlying action through 2009,

18  including through the discovery process, case management conferences, and two trial settings. Reynolds

19  Decl. ¶ 20.

20    On July 10, 2009, Brown wrote plaintiff a letter informing him,

21    [B]ecause your girlfriend and co-habitant, Ms. Costanzo, is a listed-insured driver under
22    your Allstate policy, she cannot obtain insurance monies against you for the subject
      accident. The only monies she would be able to obtain would be coming directly from
23    you, not your insurance carrier.

24    You were going to discuss this with Ms. Costanzo and get back to me. However, to date,
      we have not heard back from you. . . .

25  Valdez Decl. Ex. C. On July 16, 2009, Brown wrote Reynolds another letter stating,

26    To reiterate and to make sure that you are clear about the monies that Ms. Costanzo is
      seeking, she seeks your personal money, your assets. As previously stated, she will not
27    be able to obtain insurance monies as she was a covered-insured under your policy.

28  *Id*.

4

**United States District Court**
For the Northern District of California

1    On January 21, 2010, Costanzo served a California Code of Civil Procedure § 998 Offer to

2 Compromise in the amount of $250,000. Martin Decl. ¶ 2, Ex. A. Brown forwarded the offer to

3 plaintiff on February 6, 2010, and in a separate letter on the same date, wrote,

4       The attorney for Ms. Costanzo has made a policy limit demand and Offer to
        Compromise, CCP, Section 998, for $250,000.00 to settle her case against you. As you
5       know, and as I have previously expressed to you, I do not believe that there is insurance
        money that covers you in this case due to the fact that Ms. Costanzo appears to be
6       someone who is excluded from suing you because she is a named-insured and/or is a
        household member.
7
*Id*., Ex. B at Reynolds Depo. Ex. M. The offer expired with no response from Allstate.
8
     In a letter dated February 26, 2010, Allstate notified plaintiff that Allstate "agrees to pay for your
9
defense in connection with Ms. Costanzo's action under your Allstate motorcycle policy, subject to a
10
reservation of rights." Reynolds Decl. Ex. F at AS 0001148. The letter stated, *inter alia*, that "Allstate
11
must reserve its right to deny coverage for [Costanzo's] suit on the ground the bodily injuries at issue
12
therein were sustained by a named insured (Ms. Costanzo), and therefore fall within Exclusion 6." *Id*.
13
at AS 0001149. The letter also stated, "As you know, Allstate has selected Michael Brown of the Law
14
Offices of Michael F. Brown to defend you in this case. Although Allstate is reserving the right to
15
dispute coverage, the coverage issues raised in this letter are separate from any disputed issue in the suit
16
by Ms. Costanzo, so there is no conflict of interest between you and Mr. Brown that could affect his
17
representation of you. If you would like to select separate counsel at your own expense to associate with
18
Mr. Brown in the defense of this action, however, you are welcome to do so." *Id*. at AS 0001150.[3]
19
     Plaintiff filed this declaratory relief action in state court on September 21, 2010, and Allstate
20
removed the case to this Court. The parties have filed cross-motions for summary judgment. Plaintiff
21
seeks a declaration that Exclusion 6 does not apply to deny coverage to Costanzo's injuries. In the
22
alternative, plaintiff seeks a declaration that Allstate has waived or is estopped from relying on
23
Exclusion 6 because plaintiff contends that Allstate did not notify him of its intent to reserve rights as
24
to coverage for Costanzo's injuries until well after undertaking defense of the underlying action and
25
until after the expiration of Costanzo's § 998 offer to settle. Allstate seeks a declaration that Exclusion
26

27       [3] Plaintiff notes that the February 26, 2010 letter contains several factual errors, such as referring
to Costanzo as "Ms. Reynolds" and as plaintiff's "domestic partner," despite the fact that plaintiff and
28 Costanzo have never been married and have never been registered as domestic partners.

5

1   6 applies and that Allstate has and had no duty to defend or indemnify plaintiff in the underlying action.

2   Allstate also disputes that it has waived or is estopped from relying on Exclusion 6.

3

4                                          **DISCUSSION**

5   **I.      The parties' contentions**

6            Exclusion 6, as it appears in the endorsement, bars coverage for:

7            **[B]odily injury** to an insured person or **bodily injury** to an insured person whenever the
            ultimate benefits of that indemnification accrue directly or indirectly to an insured
8            person.  This exclusion applies only to **you** and **resident** relatives.

9   Davis Decl. Ex. A, Endorsement at 5.  The parties agree that Costanzo is "an insured person," and thus

10  that the first sentence of Exclusion 6 standing alone would bar coverage for her injuries.  However, the

11  parties dispute the meaning of the second sentence of the exclusion, and whether the second sentence

12  of the exclusion applies to Costanzo.  Specifically, the parties dispute whether Costanzo falls within the

13  definition of "you," which is defined as "the policyholder named on the Policy Declarations."

14           Plaintiff argues that Costanzo does not fall within the definition of "you" because "you" is

15  defined as "the policyholder named on the Policy Declarations," and the policyholder is plaintiff.

16  Plaintiff argues that Exclusion 6 applies only to "the policyholder" on the declarations page, and there

17  can only be one policyholder in the singular.  Plaintiff argues that Exclusion 6, the definition of "you,"

18  and the Declarations Page cannot be interpreted together to discover the identity of the policyholder

19  because the term "policyholder" is absent from the Declarations Page. Plaintiff asserts that because the

20  policy does not identify who "the policyholder" is, the Court must consider extrinsic evidence to

21  determine the identity of the policyholder.  Plaintiff cites dictionary definitions of "policyholder," and

22  argues that "[c]ommon knowledge and understanding is that a policyholder is the person who owns the

23  policy, who purchased the policy, who made the application for the policy, who makes the premiums

24  on the policy, and who resides at the place where the policy information is sent.  That person is Gary

25  Reynolds and only Gary Reynolds."  Reply at 1:9-12.  Plaintiff argues that "the policyholder" and "an

26  insured" are not interchangeable because anyone can be an insured on a policy with the consent of the

27  policyholder and the acceptance by the insurance company.  Plaintiff provides several examples of

28  situations involving policyholders who are different from insureds, such as a father who owns a policy

**United States District Court**
For the Northern District of California

and who adds his 16 year old son as an insured, or a landlord who requires a tenant (the policyholder) to carry insurance and add the landlord as an insured.

Defendant argues that the second sentence of Exclusion 6 – "This exclusion applies only to **you** and **resident** relatives" – limits the exclusion's application to the first two categories of "an insured person": "you" and certain "residents." Defendant argues that by process of elimination, this means that the exclusion does not apply to the final category of "an insured person," namely "any other person using [your insured auto] with your permission." Defendant argues that the intended function of the second sentence is to limit the exclusion's scope to exempt permissive users, not to redefine "insured person." Defendant contends that it makes sense to exclude injuries to the named insureds and resident relatives while covering injuries to unrelated permissive users "to prevent suspect inter-family legal actions which may not be truly adversary and over which the insurer has little or no control." *Farmers Inc. Exch. v. Cocking*, 29 Cal. 3d 383, 389 (1981). Relatedly, defendant argues that plaintiff's concession that Costanzo is an "insured person" compels the conclusion that she is "you," because that is the only type of "insured person" she could be. Defendant argues that there are only three categories of "insured person": (a) "you," (b) "residents," and (c) permissive users ("any other person using [your insured auto] with your permission"), and Costanzo was neither a resident nor a permissive user.

Defendant contends that a reasonable insured would have no difficulty understanding that "you" includes Costanzo. Defendant asserts that nothing in the policy states that the term "policyholder" actually appears in the declarations, and instead the policy merely refers to "you" as the policyholder "*named* on the Policy Declarations[.]" Defendant argues that to determine who "you" is, the reader is directed to look at the names appearing in the Policy Declarations, and that a reasonable insured would understand that the person "named on the Policy Declaration" is "you."

## II.    Principles of policy interpretation

The interpretation of an insurance policy is a question of law. *Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 18 (1995). "The rules governing policy interpretation require us to look first to the language of the contract in order to ascertain its plain meaning or the meaning a layperson would ordinarily attach to it." *Id.* "'While insurance contracts have special features, they are still contracts

1   to which the ordinary rules of contractual interpretation apply.'" *Haynes v. Farmers Ins. Exch.*, 32 Cal.

2   4th 1198, 1204 (2004) (quoting *Palmer v. Truck Ins. Exchange*, 21 Cal. 4th 1109, 1115 (1999)).

3   Accordingly, insurance policies "must be interpreted to give effect to the mutual intent of the parties at

4   the time of contracting, and such intent is ascertained, if possible, from the clear and explicit language

5   of the contract." *St. Paul Mercury Ins. Co. v. Frontier Pacific Ins. Co.*, 111 Cal. App. 4th 1234, 1243

6   (2003) (internal citation and quotations omitted). "If contractual language is clear and explicit, it

7   governs.   On the other hand, when policy language is ambiguous, rules applicable to resolving

8   ambiguity control." *Id*. (citing *Bank of the West v. Superior Court*, 2 Cal.4th 1254, 1264–1265 (1992)).

9        "An insurance policy provision is ambiguous when it is capable of two or more constructions,

10  both of which are reasonable." *Bay Cities Paving & Grading, Inc. v. Lawyers' Mut. Ins. Co.*, 5 Cal. 4th

11  854, 867 (1993). "The uncertainty may relate to the extent or existence of coverage; or the peril insured

12  against; or the amount of liability; or the person or persons protected." *Jordan v. Allstate Ins. Co.*, 116

13  Cal. App. 4th 1206, 1214 (2004).   "Language in an insurance policy is interpreted as a whole, and in

14  the circumstances of the case, and cannot be found to be ambiguous in the abstract.   The proper question

15  is whether the [provision or] word is ambiguous in the context of this policy and the circumstances of

16  this case.   The provision will shift between clarity and ambiguity with changes in the event at hand."

17  *Bay Cities Paving & Grading*, 5 Cal. 4th at 868 (internal citations and quotations omitted). "Ambiguity

18  is resolved by interpreting the ambiguous provisions in the sense the [insurer] believed the [insured]

19  understood them at the time of formation." *E.M.M.I. Inc. v. Zurich Am. Ins. Co.*, 32 Cal. 4th 465, 470

20  (2004). "If application of this rule does not eliminate the ambiguity, ambiguous language is construed

21  against the party who caused the uncertainty to exist." *Id*.   "This rule, as applied to a promise of

22  coverage in an insurance policy, protects not the subjective beliefs of the insurer but, rather, the

23  objectively reasonable expectations of the insured." *Id*. (internal citation and quotations omitted). "Any

24  ambiguous terms are resolved in the insureds' favor, consistent with the insureds' reasonable

25  expectations." *Id*. at 471 (internal citation and quotations omitted).

26       Further, "policy exclusions are strictly construed, while exceptions to exclusions are broadly

27  construed in favor of the insured." *Id*. (internal citations omitted).   "Thus, the burden rests upon the

28  insurer to phrase exceptions and exclusions in clear and unmistakable language." *Id*. (internal citation

**United States District Court**
For the Northern District of California

8

1    and quotations omitted). "This rule applies with particular force when the coverage portion of the

2    insurance  policy would lead an insured to reasonably expect coverage for the claim purportedly

3    excluded." *Id.*

4

5    **III.    The policy is ambiguous**

6         Applying the foregoing principles of policy interpretation, the Court concludes that in viewing

7    the language of the policy as a whole and under the circumstances of this case, there is an ambiguity

8    between Exclusion 6's application to "you," the policy's definition of "you" as "the policyholder named

9    on the Policy Declarations," and the listing of two "named insureds" on the Declarations page, neither

10   of whom is identified as the "policyholder."  While the fact that the term "policyholder" is not defined

11   in the policy does not by itself create an ambiguity, *Foster-Gardner, Inc. v. National Union Fire Ins.*

12   *Co.*, 18 Cal. 4th 857, 868 (1998), on the facts here there is an ambiguity because the Declarations page

13   does not identify the "policyholder," and instead lists two "named insured(s)."  As a result, one cannot

14   determine from the face of this policy the identity of the "policyholder" to whom Exclusion 6 applies.

15        Defendant argues that the policy is not ambiguous because "no reasonable person would have

16   difficulty figuring out who the 'policyholder listed on the Policy Declarations' is."  Reply at 5:6-7.

17   Defendant asserts that "although the term 'policyholder' does not appear on the declarations page, that

18   term must have some meaning and the only reasonable construction, when interpreting the policy as a

19   whole and with each provision in context, is that 'the policyholder named on the Policy Declaration'

20   refers to the only names that appear on the declarations under the heading "NAMED INSURED(S)[.]"

21   Cross-Motion at 10:1-5.  However, defendant's argument assumes that "policyholder" and "named

22   insured(s)" or "insured" have the same meaning and necessarily refer to the same people.  They do not.

23   "Words in an insurance policy, unless given special meanings by the policy itself, must be understood

24   in their ordinary sense." *Scott v. Continental Ins. Co.*, 44 Cal. App. 4th 24, 28 (1996).  "In seeking to

25   ascertain the ordinary sense of words, courts in insurance cases regularly turn to general dictionaries."

26   *Id.* at 29 (citing cases). Merriam-Webster's Collegiate Dictionary defines "policyholder" as "the owner

27   of an insurance policy." Merriam-Webster's Collegiate Dictionary 960 (11th ed. 2003). Contrary to

28   defendant's assertion, "the policyholder" and the "insured" need not be the same person because people

*United States District Court*
For the Northern District of California

**United States District Court**
For the Northern District of California

1   can be insured under a policy without being the owner of that policy.

2          Here, the insurance policy is ambiguous because it is capable of either party's construction, both

3   of which are reasonable.  Under plaintiff's construction, Exclusion 6 prevents a negligent policyholder

4   from recovering for his own injuries because Exclusion 6 is limited to "you,"[4] and "you" in turn in

5   defined as "the policyholder named on the Policy Declarations."  Although defendant asserts that this

6   construction is "nonsensical" because, *inter alia*, plaintiff does not "explain why he would ever sue

7   himself," Cross-Motion at 13:12, 27-18, the California Supreme Court has held, when interpreting

8   slightly different language, that such a construction was reasonable.  In *State Farm Mutual Automobile*

9   *Insurance v. Jacober*, 10 Cal. 3d 193 (1973), the court rejected the insurance company's argument that

10  "since a person cannot sue himself for injuries he negligently inflicts on himself, the claimants'

11  proposed interpretation of the exclusion would render the clause nugatory."  *Id.* at 207.  In *Jacober*, the

12  court held that an exclusion of coverage for "bodily injury to the insured" meant that a negligent insured

13  driver would be unable to recover under the policy for his own injuries, but that co-insured passengers

14  could recover under the policy based on the liability of the co-insured driver.  *Id.* at 207-08.  Defendant

15  contends that *Jacober* does not support plaintiff because in that case, the exclusionary clause barred

16  coverage for injury to "*the* insured," whereas here Exclusion 6 bars coverage for bodily injury to "*an*

17  insured."  Although defendant is correct that the first sentence of Exclusion 6 excludes coverage for

18  "bodily injury to *an* insured person . . .", the second sentence limits the exclusion to "you," which in

19  turn is defined as "*the* policyholder named on the Policy Declarations . . . ."  Thus, while *Jacober* is not

20  squarely on point, *Jacober* is nonetheless instructive in that the court held that the construction advanced

21  by plaintiff here is reasonable.

22         The Court also finds that the construction proposed by defendant is not unreasonable. Defendant

23  argues that the second sentence of Exclusion 6 – "This exclusion applies only to **you** and **resident**

24  relatives" – limits the exclusion's application to the first two categories of "an insured person": "you"

25  and certain "residents," thus limiting the exclusion's scope to exempt permissive users.  As defendant

26  notes, insurance policies frequently contain "insured person" exclusions "to prevent suspect inter-family

27

28          [4] Exclusion 6 also applies to "resident relatives," which is not at issue in this case.

10

United States District Court

For the Northern District of California

1    legal actions which may not be truly adversary and over which the insurer has little or no control."

2    *Cocking*, 29 Cal. 3d at 389.[5]

3

4    **II.     Reasonable expectation of the insured**

5          "'If the terms of a promise are in any respect ambiguous or uncertain, it must be interpreted in

6    the sense in which the promisor believed, at the time of making it, that the promisee understood it.'"

7    *Bank of the West*, 2 Cal. 4th at 1265 (quoting Cal. Civ. Code § 1636).   "This rule, as applied to a

8    promise of coverage in an insurance policy, protects not the subjective beliefs of the insurer but, rather,

9    'the objectively reasonable expectations of the insured.'" *Bank of the West*, 2 Cal. 4th at 1265 (quoting

10   *AIU Ins. Co. v. Superior Court*, 51 Cal.3d 807, 822 (1990)).   In resolving this question, the Court must

11   "interpret the language in context, with regard to its intended function in the policy," as well as

12   "common sense." *Id*. at 1265, 1276.

13         The Court may consider extrinsic evidence to resolve this question.   *See Cooper Cos. v.*

14   *Transcontinental Ins. Co.*, 31 Cal. App. 4th 1094, 1107 (1995); Hon. Croskey *et al.*, California Practice

15   Guide: Insurance Litigation § 4:311 (2010).   The Court examines the insured's objectively reasonable

16   expectations as of the time the contract was made rather than when the conduct or event giving rise to

17   the claim occurred. *See Safeco Ins. Co. of America v. Robert S.*, 26 Cal. 4th 758, 766 (2001).   In

18   addition, "evidence of the insurer's and insured's 'course of performance'– repeated transactions under

19   the policy – is generally admissible in interpreting policy terms."   Hon. Croskey *et al.*, California

20   Practice Guide: Insurance Litigation § 4:177.5 (2010).   "The conduct of the parties after execution of

21   the contract and before any controversy has arisen as to its effect affords the most reliable evidence of

22   the parties' intentions." *Employers Reins. Co. v. Sup. Ct.*, 161 Cal. App. 4th 906, 921 (2008).

23         The record shows that plaintiff purchased the policy on his own behalf in 1999, and that at all

24

25         [5]   At the hearing, defendant's counsel asserted that if Exclusion 6 was interpreted to apply to
26   plaintiff (because plaintiff is "you"), Costanzo's claim for damages from plaintiff would not be covered
     because Exclusion 6 excludes coverage for liability for bodily injury to an insured person.   However,
27   this argument ignores the ambiguity that is created by the second sentence of Exclusion 6.   Because
     plaintiff's construction of Exclusion 6 (as preventing a negligent policyholder from recovering for his
28   own injuries because Exclusion 6 is limited to "you," and "you" in turn in defined as "the policyholder
     named on the Policy Declarations") is also reasonable, the policy is ambiguous.

United States District Court
For the Northern District of California

1    times during the existence of the policy, plaintiff paid all of the premiums.  Reynolds Decl. ¶ 4;

2    Costanzo Decl. ¶ 7.  After plaintiff and Costanzo purchased the 2006 Harley-Davidson, plaintiff

3    contacted Allstate to add the new motorcycle to his existing policy. Reynolds Decl. ¶¶ 8, 10.  Costanzo

4    believed that because she was the holder of the loan, she was required to be added as an insured under

5    plaintiff's policy, Costanzo Decl. ¶ 13, and plaintiff instructed his Allstate agent to add Costanzo as an

6    additional insured.  Reynolds Decl. ¶ 11.  On March 7 or 8, 2006, Costanzo sent a facsimile to plaintiff's

7    Allstate agent stating "please insure as follows: Gary V. Reynolds + Janice L. Costanzo" and including

8    Costanzo's contact information.  Costanzo Decl. ¶ 16; Martin Decl. Ex. A, Depo. Ex. H.  Costanzo

9    never filled out, nor was she asked by Allstate to fill out, an insurance application for the motorcycle.

10   Costanzo Decl. ¶ 18.  Plaintiff and Costanzo have never been married or registered domestic partners,

11   and they were not residing together at the time of the accident.  Reynolds Decl. ¶¶ 13-14; Costanzo

12   Decl. ¶¶ 17, 25.  After Costanzo was added to the policy, all premium invoices and accompanying

13   period amendments to the policy continued to be sent to plaintiff's home at 1124 Odyssey Court, San

14   Jose, California 95118.  Reynolds Decl. ¶ 15.  Costanzo never received a copy of the policy or any

15   amendments or endorsements at her address, 2683 Parkside Drive, Fremont, California 94536.  Costanzo

16   Decl. ¶ 7.  On these facts, an insured reading the policy as a layperson might reasonably conclude that

17   Exclusion 6 only applied to plaintiff, the policyholder, and would not apply to Costanzo, who was

18   neither the policyholder nor a resident relative.[6]

19

20   **III.     The exclusion is not plain and clear, and is strictly construed against Allstate**

21          Further, the Court is guided by the principle that exclusions and limitations on coverage are

22   "strictly construed against the insurer and liberally interpreted in favor of the insured."  *Delgado v.*

23   *Heritage Life Ins. Co.*, 157 Cal. App. 3d 262, 271 (1984).  Similarly, exceptions to exclusions – such

24   as the exception at issue in Exclusion 6 – are to be construed broadly in favor of the insured.  *See Aydin*

25   *Corp. v. First State Ins. Co.*, 18 Cal. 4th 1183, 1192 (1998).  "Conspicuous placement of exclusionary

26   language is only one of two rigid drafting rules required of insurers to exclude or limit coverage.  The

27

28          [6] The parties did not cite any case law interpreting the term "policyholder," and the Court was unable to locate any case involving a similar ambiguity between the terms "policyholder" and "insured."

**United States District Court**
For the Northern District of California

1  language itself must be plain and clear.  This means more than the traditional requirement that contract

2  terms be 'unambiguous.'  Precision is not enough.  Understandability is also required." *Haynes v.*

3  *Farmers Ins. Co.*, 32 Cal. 4th 1198, 1211 (2004).

4          For the reasons stated *supra*, the limitation on coverage is not plain and clear.  Under defendant's

5  construction, a layperson is required to deduce by cross-referencing Exclusion 6 and the definition of

6  "Insured Persons" that Exclusion 6 applies to the first two categories of "Insured Persons": "you" and

7  "residents," and therefore that Exclusion 6 does not apply to the third category of "Insured Persons":

8  "any other person using [your insured auto] with your permission" -- in other words, a permissive user.

9  The Court is doubtful that an average lay reader would understand that he or she needed to compare the

10  terms of exclusion against the definition of "Insured Person," which, unlike the other defined terms, is

11  not bolded in the exclusion.  Exclusion 6, as it appears in the endorsement, bars coverage for:

12          **[B]odily injury** to an insured person or **bodily injury** to an insured person whenever the
          ultimate benefits of that indemnification accrue directly or indirectly to an insured
13          person.  This exclusion applies only to **you** and **resident** relatives.

14  Davis Decl. Ex. A, Endorsement at 5.  Instead, a reasonable layperson would read Exclusion 6 and likely

15  turn to the definitions of "you" and "resident," the two terms bolded in the sentence "This exclusion

16  applies only to **you** and **resident** relatives."  At the risk of repetition, the endorsement defines "**You**"

17  as "the policyholder named on the Policy Declarations . . . ."  *Id.* at 4.  A reasonable lay person reading

18  Exclusion 6, the definition of "You," the definition of "Insured Person," and the Declarations page

19  would not necessarily understand that Exclusion 6, as Allstate asserts, did not apply to permissive users.

20          *Haynes v. Farmers Insurance Exchange*, which interpreted similar exclusionary language, is

21  instructive. In *Haynes*, the California Supreme Court interpreted exclusionary language that purported

22  to reduce coverage for permissive users of an insured vehicle.  The policy stated that an "insured

23  person" includes "Any person using your insured car,"and that for an "insured person, other than you

24  or a family member," coverage is provided "up to the limits of the Financial Responsibility Law only."

25  *Id.* at 1203.  The language was amended by an endorsement to read,

26          We will provide insurance for an Insured person, other than you, a family member or a
          listed driver, but only up to the minimum required limits of your state's Financial
27          Responsibility Law of $15,000 per person and $30,000 per occurrence for bodily injury,
          and $5,000 for property damage.
28

**United States District Court**
For the Northern District of California

1  *Id.* The insurance company argued that an insured could reasonably be expected to understand that a

2  reduction in coverage to "an Insured person, other than you, a family member or a listed driver" meant

3  a reduction of coverage for a permissive driver. *Id.* at 1205.

4       The *Haynes* court rejected the insurance company's contention and held that the permissive user

5  limitation was not plain or clear:

6      Although the term "permissive user" appears in the title of the endorsement containing
the limitation, the term is nowhere defined, neither in the policy nor the endorsement,

7  for the average lay reader. While an attorney or an insurance professional likely could
deduce from close examination of the entire document that permissive user refers to "an

8  insured person, other than you, a family member or a listed driver" (the phrase that
appears in the permissive user limitation itself) and, by cross-referencing to the

9  definition of insured person in the liability section, that such an "insured person" is "Any
person using your insured car" but not "Any person who uses a vehicle without having

10  sufficient reason to believe that the use is with the owner's permission," the average lay
reader encountering the term in the title of endorsement S9064 would not necessarily

11  understand its significance.

12  *Id.* at 1211. Here, as in *Haynes*, a reasonable layperson cannot be expected to cross-reference the

13  definitions of "you" and "insured person,"and deduce that Exclusion 6 did not apply to permissive users,

14  but that Exclusion 6 did apply to everyone listed as a "Named Insured(s)" on the Declarations page.

15       As the Court concludes that Exclusion 6 does not apply to bar coverage for Costanzo's injuries,

16  the Court finds it unnecessary to address plaintiff's waiver and estoppel theories.

17

18                        **CONCLUSION**

19       For the foregoing reasons, the Court GRANTS plaintiff's motion for summary judgment and

20  DENIES defendant's motion for summary judgment. Docket Nos. 35 & 36.

21

22      **IT IS SO ORDERED.**

23

24  Dated: January 19, 2012

                                          SUSAN ILLSTON

25                                            United States District Judge

26

27

28

                        14